UNITED STATES of America,
Plaintiff-Appellee,

v.

John Andrew GRESCHNER,
Defendant-Appellant.

No. 80–2216.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1981.

Decided April 21, 1981.

David E. Booth, Federal Public Defender,
East St. Louis, Ill., for defendant-appellant.

Mary B. Beauparlant, Asst. U. S. Atty.,
East St. Louis, Ill., for plaintiff-appellee.

Before SWYGERT and SPRECHER, Circuit Judges, and MARSHALL, District Judge.[*]

SPRECHER, Circuit Judge.

This case involves the stabbing of a prisoner in a United States prison by another prisoner. The defendant was convicted of assault and of conveying a weapon within the prison. The defendant appeals certain evidentiary rulings regarding the assault charge and raises arguments concerning sufficiency of the evidence and double jeopardy regarding the conveying charge. We reverse both convictions.

## I

On November 18, 1979, John Andrew Greschner and John Henry Logan were inmates at the United States Penitentiary, Marion, Illinois. Greschner was a resident of the control unit. Logan was in the control unit, cutting Greschner's hair.

At some point while Logan was cutting Greschner's hair, a fight developed between the two. Greschner swung at Logan. During the fight, Greschner was seen holding a homemade knife in his hand. A correctional officer stopped the fight. Logan was taken to the hospital with multiple stab wounds. Greschner had no wounds.

At trial, Greschner represented himself and presented a defense of self-defense. Defense witnesses testified that Logan attacked Greschner with a knife and that another inmate gave Greschner a knife, that he then used in self-defense. Greschner was convicted on both the assault, 18 U.S.C. 113(f), and conveying, 18 U.S.C. 1792, charges and was sentenced to ten years on each charge.

## II

The defendant argues that certain evidentiary rulings of the trial court deprived him of the opportunity to present his defense adequately. The defendant attempt-

ed to present a theory of self-defense. The law allows such a theory. *See generally* Strong, *The Predicates of Criminal Liability*, 1980 Wis.L.Rev. 441. In presenting his defense, the defendant sought to prove that Logan had a character trait for violence and that Logan had a motive for attacking the defendant. The trial court excluded evidence on each issue.

### A

First, the defendant attempted to present evidence that Logan previously had stabbed another inmate. The government objected on grounds of relevancy. The trial court upheld the objection.

To determine whether the proffered line of inquiry was relevant to the defendant's case, we begin by reviewing Fed.R.Evid. 401, which provides as follows:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

As the Advisory Committee's Note indicates, the standard of probability is not stringent. The standard for relevancy is only that the evidence would make the existence of the fact "more probable." As Professor McCormick has stated, "[a] brick is not a wall." Advisory Comm.'s Note, *quoting McCormick on Evidence*, § 152 at 317.

In this case, the question becomes whether the victim's participation in a previous stabbing has "any tendency" to make the existence of the fact in issue—that he had a violent character—more probable. We conclude that such evidence does make the existence of that fact more probable. Also, the "violent character" line of proof is relevant to the defendant's theory of self-defense in that it makes his version that the victim attacked him "more probable." Therefore, the character evidence proffered was relevant.

[*] Honorable Prentice H. Marshall, District Judge for the Northern District of Illinois, is sitting by designation.

■ Character evidence, although relevant, generally is not admissible for the purpose of proving that a person acted in conformity with that character. But Fed. R.Evid. 404 creates a specific exception allowing a defendant to offer evidence of a pertinent character trait of a victim. Offering such evidence was precisely what the defendant was trying to do in this case.[1]

The government next argues that, even if the evidence was relevant and admissible under Rule 404, it was still properly excluded because it would have been "distracting", cumulative, hearsay, and because the defendant did not lay the proper foundation for his questions. These arguments are virtually frivolous. Since evidence of Logan's character is relevant to the defendant's defense, we do not see how it could be "distracting" any more than any other acceptable defense theory. The government's argument that such evidence would be cumulative because "most incarcerated prisoners have committed violent crimes" is totally unsubstantiated. Even if the government could establish that the quoted statement is true, that would not indicate that the evidence in the defendant's trial was cumulative.

The government next argues that the defendant's attempt to introduce the victim's character trait of violence through an inmate witness was hearsay. The witness testified that Logan was placed in the control unit "for a stabbing." But regardless of whether that particular statement might have been hearsay,[2] the trial court ruled that the *subject matter* of the proffered character evidence was irrelevant and directed the defendant, representing himself, to move on to another area.[3] Had the exclusion been based merely on hearsay, which it was not, the defendant would have had the opportunity to reformulate his questions or subpoena other witnesses, if possible, to substantiate the stabbing.

■ Finally, the government argues that the defendant failed to lay the proper foundation for the introduction of evidence regarding Logan's propensity for violence. But as we stated in *United States v. Fountain*, 642 F.2d 1083, at 1087 n.3 and 1088 n.4 (7th Cir. 1981), we decline to elevate procedural formalities to insurmountable barriers, especially where a defendant is not represented by counsel. In this case, where the court clearly ruled the evidence irrele-

1. Although, under certain narrow circumstances, evidence of prior convictions can be used to impeach *witnesses*, Fed.R.Evid. 609, the general rule is that such evidence tends to be so prejudicial that, absent compelling circumstances, it should not be admitted. See the thoughtful discussion of this issue in *United States v. Jackson*, 405 F.Supp. 938, 939–43 (E.D.N.Y.1975) (Weinstein, J.). *See also United States v. Fountain*, 642 F.2d 1083, at 1091–1093 (7th Cir. 1981); and *United States v. Cook*, 608 F.2d 1175, 1187 (9th Cir. 1979), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). The reason that prior convictions are disfavored, however, is *not* that they are irrelevant, but that they may be extremely prejudicial. In the instant case, there was no issue of prejudice since Logan was neither a defendant nor a witness.

2. The government does not proffer a specific argument—aside from a conclusory statement—that the testimony *was* hearsay. Presumably, the government asks us to take judicial notice that the witness did not personally know why the victim was in the control unit. A judicially noticed fact "must be one not subject to reasonable dispute." Fed.R.Evid. 201. This is a high standard. *See United States v.*

*Wilson*, 631 F.2d 118, 120 (9th Cir. 1980). The fact in issue here—the witness' knowledge—might very well be the subject of reasonable dispute. Therefore, we decline to sua sponte take judicial notice that the witness' statement was hearsay and, if so, was outside the scope of the hearsay exceptions.

3. Q. Do you know what he was placed in the control unit for?
   A. Yes, I do.
   Q. Would you tell me, sir?
   A. A stabbing.
   MS. BEAUPARLANT: Your Honor, I object to this.
   THE COURT: I sustain the objection. That's irrelevant.
   MR. GRESCHNER: Well, Your Honor, I believe it is relevant in that my defense is self-defense and that the actual incident this man was placed in the control unit for is relevant to the self-defense defense I'm putting on here.
   THE COURT: I sustain the objection, Mr. Greschner. Move on to something else, sir. Tr., 112.

vant, that the defendant may have misstepped along the sophisticated procedural path of "laying a foundation," cannot overcome the improper exclusion of the proffered evidence. Therefore, for the foregoing reasons, the trial court's exclusion of evidence regarding the victim's character trait for violence was erroneous.

### B

The trial court also excluded evidence tending to show that Logan had a specific motive for attacking the defendant. The defendant's theory was that Logan thought that the defendant had spread the word within the prison that Logan was an informer. The government objected, on relevancy grounds, to this evidence. The trial court sustained the objection.

The defendant argues that evidence that Logan thought the defendant had labelled Logan an informant would make the defendant's theory "more probable" and therefore, the evidence was relevant. We agree. It is beyond reasonable dispute that

4. The government does not point to any other evidentiary rule under which this evidence would be inadmissible. Indeed, the government does not even discuss this evidentiary issue in its brief.

5. In *Fountain*, a very similar case which will be discussed in greater detail later in this opinion, the defendant had been allowed to introduce evidence that his victim had a violent nature and had committed homosexual attacks on other inmates. At 742.

6. Because of our reversal on these evidentiary grounds, we need not reach the defendant's argument that the trial court committed reversible error by refusing to let the defendant, in closing argument, comment on the government's failure to call the victim as a witness. But because this issue may come up again at a new trial, we indicate that we see no grounds for the refusal of such comment in the defendant's closing argument. That the defendant could have called the victim as a witness and did not do so, does not estop him from commenting on the government's failure to produce the victim.

Both the defendant and the government discuss the law regarding the propriety of an instruction that an inference of unfavorable testimony arises whenever a party, who has it peculiarly within his or her power to produce a witness, does not do so. But the question of

labelling an inmate an informer presents a very serious liability to the labelled inmate. If an inmate believes that he or she has been labelled an informer, the inmate might seek revenge. Of course, we express no opinion as to whether the defendant's proof would be persuasive. But it certainly would be a "brick in his wall." Fed.R.Evid. 401, Advisory Comm.'s Note. Therefore, the proffered evidence was relevant.[4] The trial court's ruling excluding this motive evidence as irrelevant was erroneous.

The excluded evidence related specifically to the defendant's self-defense theory. The trial court's improper exclusion of the character and motive evidence was seriously prejudicial to that theory.[5] Therefore, the improper evidentiary rulings require reversal of the defendant's assault conviction[6] and a new trial.

### III

We now consider the defendant's argument that his conviction for "conveying" a knife must be reversed. The defendant's

*comment* in final argument is different from the question of an *instruction* from the court. As we stated in *United States v. Mahone*, 537 F.2d 922, 927–28 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976), even when an absent witness instruction is not required, an absent witness comment in final argument can be allowed. In *Mahone*, we quoted approvingly from *United States v. Young*, 463 F.2d 934, 943 (D.C.Cir.1972):

There is a difference between an instruction, which has the weight of law, and argument of counsel, which is only that . . . . [I]n the in-between case where each side has the physical capacity to locate and produce the witness, and it is debatable which side might more naturally have been expected to call the witness, there may be latitude for the judge to leave the matter to debate without an instruction, simply permitting each counsel to argue to the jury concerning the "natural" inference of fact to be drawn.

In this case, we understand that the victim was available to both the defendant and the government. Thus, *Young* and *Mahone* suggest that either side should be allowed to comment on the other side's failure to produce the victim. We agree. If, however, the defendant is prevented from producing the victim by government officials, an absent witness instruction may be required.

arguments are very similar to arguments we considered recently in *United States v. Fountain*, 642 F.2d 1083 (7th Cir. 1981), and we are guided by the principles set forth there.

### A

■ The defendant argues that convictions for both the assault charge and the conveying charge amounted to double jeopardy because both charges punish him for the same action. We reject this argument for the same reasons we rejected it in *Fountain*, at 1093–1095. First, there is no evidence of legislative intent to punish the crimes other than separately. Second, the elements of an assault charge are different from the elements of a conveying charge.[7]

■ Third, in order to avoid double jeopardy, the proof required for conviction must meet the test announced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See Albernaz v. United States*, —— U.S. ——, ——, 101 S.Ct. 1137, 1140, 67 L.Ed.2d 275 (1981). The *Blockburger* test is as follows:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Here, looking to the elements of each crime, *see* note 7 *supra*, we see that each crime requires proof of facts the other does not. Under the assault charge, the government must prove that the defendant assaulted the victim and that the assault resulted in serious injury. As will be discussed, assault with a knife, without more, does not necessarily include "conveying" that knife. Therefore, we find that the

defendant's convictions of both assault and conveying do not violate his rights against being placed in double jeopardy.

### B

■ Second, the defendant argues that his conviction for conveying the knife should be reversed for insufficient evidence. He argues that the evidence did not establish that his possession, use, and surrender of the knife amounted to "conveying" the knife. We agree.

In *Fountain*, at 1092–1093, we reviewed the case law regarding what "use" of a weapon amounts to a "conveying" of a weapon. We emphasized that mere possession could not support a conveying conviction; some transportation must occur. We then found that the facts there clearly amounted to substantial transportation. *Id.* at 1093.

But the facts in the present case do not demonstrate any significant transportation, aside from the actual possession, use, and surrender of the knife. A close review of the evidence only shows that the defendant used the knife to stab Logan; he then surrendered the knife to prison officials.

First, unlike the situation in *Fountain*, where the evidence clearly showed that one of the defendants "conveyed" the knife to the location of the stabbing, at 1093, here, there was no such evidence. Government witnesses saw the stabbing only after it began; the defense witnesses testified that another inmate gave the knife to the defendant after he had been attacked.

Second, in *Fountain*, the evidence strongly showed a "conveyance" during the stabbing by the defendants that went far beyond the actual use. The defendants pursued their victim over a wide area, chasing

---

**7.** The elements to be proved for an assault conviction under 18 U.S.C. § 113(f) are that the defendant: (1) was under federal jurisdiction, (2) assaulted a human being, and that the assault (3) resulted in serious bodily injury. The elements to be proved for a conveying conviction under 18 U.S.C. § 1792 are that the defendant: (1) conveyed a weapon from place to place within a federal prison; and (2) knowing-

ly conveyed the weapon, *United States v. Swindler*, 476 F.2d 167, 169 (10th Cir.), *cert. denied,* 414 U.S. 837, 94 S.Ct. 183, 38 L.Ed.2d 72 (1973). The elements of the two crimes are not similar except for the fact that a defendant must be within federal jurisdiction. Neither crime is proscribed within the definition of the other crime.

him and stabbing him. At one point, a defendant was stabbing the victim, walked away from the victim to threaten correctional officers, then walked back to the victim and continued stabbing him. At 1085–1086. The evidence in the case before us does not show a similar chase scene inconsistent with self-defense.

Third, although the defendant did engage in some transportation of the knife in order to surrender it, we decline to hold that such transportation amounted to "conveying". When correctional officers first broke up the incident, the defendant was told to "back off" from the victim. He did so. The record does not reflect that the defendant was told to drop the knife. Apparently, the defendant stood motionless while the victim was removed. Then the defendant walked approximately ten feet to a waiting correctional officer and surrendered the knife. Given that this transportation was solely to surrender the knife, we conclude that this transportation does not rise to "conveying" a knife within the prison.

■ Although in many cases a defendant will both "convey" and use a weapon, there must be some line between the two actions. The line may not be a bright one, but it must exist. We cannot allow a "conveying" charge to be tacked on to every assault charge. There must be independent evidence of the "conveying" beyond the actual possession and use. *See generally United States v. Kirkland*, 637 F.2d 654 (9th Cir. 1980).

Here, the evidence only showed use of the weapon. The government did not satisfy the requirement for independent evidence of conveyance. Transportation solely for surrender will not meet that requirement. Therefore, the defendant's conviction for conveying must be reversed.

### IV

For the foregoing reasons, the defendant's conviction for assault is REVERSED AND REMANDED for a new trial and his conviction for conveying is REVERSED with instructions to enter a judgment of acquittal.